Call the first case, please. Good morning, your honors. My name is John Seastrom. I represent the appellants in this case and appreciate the opportunity to let us be heard. Basically, what this case boils down to is can an expert from an out-of-state, excuse me, can an out-of-state expert be sued in Illinois, even if that out-of-state expert never steps foot in Illinois? In this case, appellants, of course, argue that the expert can. Dr. Morrison, that out-of-state expert from Ohio, agreed to be an expert in an Illinois medical malpractice case. Dr. Morrison provided a review for that Illinois medical malpractice case. Dr. Morrison provided a report with his opinions and an affidavit with his opinions in that Illinois medical malpractice case, and he sent that report and that affidavit to Illinois, the Illinois attorneys that retained him. He testified at deposition, and ostensibly he was hired to testify at a trial that would take place in an Illinois court. In the briefs, there were, in the underlying case at the motion to dismiss, there were discussions about the contract between the plaintiffs and the referring agency or the service that found Dr. Morrison for the plaintiffs. Defendants seem to argue in the underlying case, and again in its briefs, that because, excuse me, they seem to argue that there was only a contract between the plaintiffs and this referring agency, the service that finds experts for attorneys. There was a written document, wasn't there? There was. Signed by? It was signed by the plaintiffs. And? And it was between the plaintiffs and TASA. Okay. It was not between the plaintiffs. I'm sorry. No, that's all right. Okay, it was not. And all payments, correct me if I'm wrong, all the payments were made to this agent's TASA. Yes. Go ahead. To that extent, TASA was a servicing company, or arguably TASA was an agent of Dr. Morrison that went out and procured jobs whereby Dr. Morrison could be an expert for attorneys. TASA did not, well, first of all, Dr. Morrison was not an employee of TASA, and TASA made that clear. But what defendants seem to argue is that because there was this contract between the attorneys and TASA, that somehow that brings, that also included the agreement between the plaintiffs and Dr. Morrison, which is not the case. There was an agreement with TASA, but there was also an agreement in this case between the plaintiffs and Dr. Morrison. The contract between the plaintiffs and TASA was not one in the same with the agreement that was created between the plaintiffs and Dr. Morrison. There was nothing written, no written document, or was there a written document? There were not written. Between the doctor and the plaintiffs. There was not. Can you describe that agreement then between those two parties or entities? The agreement between? The plaintiffs and the doctor. What did that consist of? I'm sorry, I didn't hear. What did that consist of, that contract? Well, the agreement, and this, again, I'm not saying that the agreement with TASA is part and parcel to the agreement with Dr. Morrison, but there is guidance from TASA's memorandum, or the agreement with TASA, which says that they do provide the service and they do collect the monies and they do pay the expert through their service. But they clearly state in their memorandum and also in an affidavit from their CEO and president that that is their only part in this transaction. And all other, they specifically say that the attorneys will be hiring Dr. Morrison. They say they will be engaging Dr. Morrison. All communications will be directly with the expert, in this case, of course, Dr. Morrison. The parties, the attorneys, sent various communications to Dr. Morrison. And, again, as I said earlier, Dr. Morrison agreed to be an expert in the case. He would receive remuneration for his involvement in the case, albeit through TASA, his agent. He provided a review in the Illinois case. He provided a report. He testified at deposition. And, again, he was ultimately going to testify at trial, should the case go to trial. And that was the agreement. Once TASA found the expert, everything, TASA's involvement was basically just to provide billing. And the agreement- I'm looking for the basics of the contract between the plaintiffs and the doctor. I mean, the offer and acceptance consideration. What did they have between those two groups? Well, through their actions and through Dr. Morrison's performance of actually reviewing the case, writing the report and signing an affidavit consistent with his report and testifying at deposition, he was not only did he agree to do such things, he had already taken substantial steps. The only thing he did not do in this case was testify at trial, and that's because the case was dismissed before that could take place. And why it was dismissed? I mean, you know, the picture I get is the reason it was dismissed is because of this doctor's deposition. Exactly. Bottom line. You know, maybe it's just from my background, but, you know, it almost seems to me that the doctor flipped the client. That's essentially our argument. Is that pretty much what happened? Right. But, you know, he says, well, here's what I say and here's my opinion, only that's not what he said at the deposition. Right. And by the time the plaintiffs got to the deposition, based on his report, based on his performance of, to that point, his performance of the agreement, they had no reason to believe that he would say the things he did at his deposition. And what he said at his deposition caused, as you pointed out, the case to be dismissed. And once that case was dismissed, the plaintiffs, in turn, sued the expert. The deposition was in Ohio. Yes. The doctor, at least regarding this case, never stepped foot in Illinois. Yes. Right? That's agreed. What kind of context did the doctor himself participate in that bears upon the state of Illinois? Well, one of the things the doctor did is he put himself out there as an expert through, again, his agent, TASA, which basically markets itself to all states, including Illinois. Also, you know, once the agreement was formed, Dr. Morrison did participate in a pending Illinois medical malpractice case. He wasn't just directing his activities into Illinois. He was actually directing his activities into an Illinois court. He was communicating with Illinois lawyers. Yes. And he said that on a matter which was reasonably foreseeable would be a matter tried within the state of Illinois. Yes. Correct? Correct. What other factors would connect him with the state? Well, some of the cases discussed communications, of course, phone calls, but they also discussed written communications. And pursuant to the agreement, and as further support that there was an agreement here, he sent his report and his affidavit by mail into Illinois to the attorneys that hired him for an Illinois medical malpractice case. He also, after, let's just say he blew the deposition, after he blew the deposition he signed an affidavit essentially admitting that. I blew it. I blew it. And in that affidavit, as we pointed out, you know, and I don't know that this is dispositive, but it's certainly supportive, he signed that affidavit pursuant to, you know, criminal penalties in Illinois. He also, you know, said in that affidavit, in the preamble of the prefatory remarks, that it's called to testify in Illinois, which contemplates that he knew he might be called to testify here in that case or another case. And he had to know that there's at least the potential for litigation arising from his actions, because in that affidavit he was admitting that he, you know, he didn't provide the right service that he agreed to. Any other questions? Thank you, Counsel. We'll give you a couple of minutes in the bottle. Okay. Thank you. Thank you. Thanks, Mr. Steele. Good morning, Your Honors. My name is Robert Steele. I represent the defendant, Dr. Morrison. It's a pleasure to be here. The first thing I would like to say is in response to the comments about the doctor's performance here, which is not really at issue, but I guess what I would like to say is, from the defendant's standpoint, given the procedural stance of the case, we take the complaint as it's alleged. Absolutely there are other issues with regard to the parties' performance in this case, and those would be at issue should the case ever get that far. But one of the things that we need to focus on, then, if we're going to take the complaint as it's alleged, which puts the blame all on Dr. Morrison, of course, is what the plaintiffs have alleged about their own behavior. And I think that the primary statement in the complaint that is of most importance here is allegation number 10. We're talking about hiring. We're talking about contracts. We're talking about other things. Paragraph 10, or excuse me, allegation number 10.  Plaintiffs went to Pennsylvania to TASA, went to Ohio after interviewing a national list of potential experts, selected, their word, selected an Ohio expert, and he was retained by the plaintiff through a contract with TASA. That's in the complaint. Certainly they make the allegation that there is a breach of contract against Dr. Morrison himself. As part of the motion to dismiss, Dr. Morrison provided an affidavit that there's no contrary evidence to, that he had no contract with the plaintiffs. They had the opportunity to create that record in the trial court and failed to do so. So what we're dealing with is a circumstance where Dr. Morrison didn't reach into Illinois in any manner. The plaintiffs went to Ohio and selected the expert. Why did they select the expert? The focus is on testimony in a Cook County courtroom. That's not really the focus here. Why did they need an expert? Because they needed to create expert evidence. They needed someone to create evidence which would then be admissible at trial. The testimony is delivery of the service. It is not the purpose of the retention. They needed expert testimony. And they chose to go to Ohio. There's absolutely nothing in the record that shows that Dr. Morrison reached into Illinois. So it's the plaintiff's fault. I'm not saying it's the plaintiff's fault. Is the logic of this caveat entered? No. I would be aware it's their fault that all of a sudden he flipped at a deposition and now he's not subject to Illinois jurisdiction when it was agreed he's coming to Illinois to testify if trials are necessary? I'm not trying to place blame on anyone for what eventually happened in the underlying case. Again, I don't think that that's really germane to where we are right now. If we're only talking about contacts in the case, I haven't heard anything, and the briefs certainly don't reveal anything about what his contacts were. Who created the relationship? I think the Sabatos case that is cited in my brief is the most important case here. And that is the plaintiff in that case crossed the state line, went into Indiana, and received professional services, which is what we're dealing with, professional services. She got her service. She came back. She sustained an injury due to the alleged negligent prescription that was issued to her in Indiana. The holding in that case, which relates back to the Yates case from the Supreme Court years before, says professional services, when an Illinois plaintiff crosses state lines to receive professional services, a malpractice action as a result of that service cannot be brought in Illinois. That's the holding of the case, and I think that that's exactly what we're dealing with here. Counsel, as far as contacts with Illinois, you claim there's no contact whatsoever. What about the communication, the correspondence? Well, of course there's the communication. I certainly don't deny that those things existed, but I think it's the creation of the relationship and whether the defendant, Dr. Morrison here, inserted himself into Illinois originally to create the relationship. The fact that he's dealing with folks in Illinois. I mean, we wouldn't be here if he wasn't dealing with folks in Illinois. So we got this far, didn't we? But it's the creation of the relationship that I think is at issue. The fact that the relationship exists and there was some communication. All the cases involve some communication. So would you say that you could never have this relationship with an out-of-state doctor unless he came across the state line? I'm sorry? When you say, is this a matter of degree? I mean, let's say you were talking to an expert for three years preparing your case and all of a sudden he says, well, you know, there really isn't any contract. There's nothing in writing here. I'm not going to testify. I mean, when does the contract exist? Well, the contract exists. I mean, Dr. Morrison obviously has a contract with TASA. It's not part of the record. I understand that. And it has its obligations. It's not part of the record. But the agreement to testify is part of his agreement with TASA. Part of the doctor's agreement with TASA? Correct. You know, given minimum context, if there are minimum contexts, the cases appear to me to say that as long as there's fairness in subjecting this out-of-state person to be subject to Illinois jurisdiction, as long as it's fair, it will be approved. So I'm interested in knowing why wouldn't it not be fair for Dr. Morrison to defend his suit in Illinois? Well, in addition to the reasoning, and this is about those cases, it comes right down on the, it's a due process case. In addition to that, you have the allegation in the complaint, which is the retention was through the TASA contract. The reason TASA is no longer a party to this case is because of the form selection. So what you end up having is Dr. Morrison, who is retained through that contract, having to defend himself here. This would expose all of those folks to jurisdiction in every state around the country, but TASA gets to escape that via its form selection clause. And that's the contract that the plaintiff signed. That's one aspect of it. Had the doctor not flipped, he would have appeared in Illinois to testify. Potentially, yes. Is that a reasonable speculation? In one manner or another, his testimony would have been given, yes. Why would it not be fair for the doctor to defend this lawsuit in Illinois because of his failure to provide the original opinion that he expressed to the plaintiffs? The fairness comes down to whether the agreement to create the evidence that the plaintiffs needed for the underlying case, for the medical malpractice case. He's not ‑‑ I haven't heard anything, and I can't think of any manner, in which he has availed himself of Illinois law in doing that. He certainly ‑‑ I mean, he gets paid. He does those sorts of things. But is he really transacting something that is giving him a benefit in the state of Illinois? He's here to provide testimony. He's going to spend the night. He'll probably fly out afterwards. What is he doing in the state of Illinois that is making himself ‑‑ that he's availing himself of? I don't see that. And that's why I think the fairness is not there, in addition to the fact that there is the underlying aspect of the fairness of the forum selection clause that is in the contract that the plaintiffs themselves signed. And it's ‑‑ ultimately, it's his lack of inserting himself into the state of Illinois. It's the Illinois lawyers coming to him and selecting him, just as they've alleged in their complaint. Thank you. Thank you, counsel. Thank you, counsel. Mr. Houston. Thank you again. One of the last questions that I was asked when I was up here earlier was regarding contacts. And I neglected to mention there is another ‑‑ there is more evidence in the case that supports contacts in Illinois. When Dr. Morrison's deposition was taken, it was clarified at the very beginning that his deposition was taken pursuant to the Illinois Code of Civil Procedure, Illinois Supreme Court rules, and the local rules that applied at the time. Counsel initially brought up this idea that we, perhaps, plaintiffs did not file a contradictory affidavit once Dr. Morrison filed a contradictory affidavit. But defendant Morrison in the underlying case, I'm sorry, in the Illinois medical malpractice case, which gives rise to all of this, Dr. Morrison signed an affidavit that said, as we talked about earlier, that he basically didn't perform his obligations at the deposition. So, in essence, the affidavit that Dr. Morrison filed later, in support of his motion to dismiss for lack of personal jurisdiction, that affidavit in and of itself was contradictory to the affidavit he had already signed. So, to that extent, there would be no reason for plaintiffs under those facts and under those two competing affidavits to file a contradictory affidavit. His affidavit in his motion to dismiss based on lack of personal jurisdiction was a contradiction in and of itself, of his own words in a prior affidavit. Counsel brought up Sabatos, and he said it was particularly persuasive here, and I would agree that it might be persuasive if Dr. Morrison went to, I'm sorry, if the attorneys in the underlying medical malpractice case went to Dr. Morrison for liposuction. They did not go to him for liposuction. What they sought were services, expert witness services, which were inextricably linked to Illinois. Dr. Morrison cannot escape that fact. Sabatos talks about cases where, well, exactly what they talked about in their case, where a patient went to see a doctor in Indiana, and that patient received medical services in Indiana, and then subsequently developed a blood clot in Illinois. That's distinguishable from this case. The plaintiffs were not going to Dr. Morrison to get treatment from his specialty as a doctor. They were going, again, to seek out his services as an expert in an Illinois medical malpractice case. So where Sabatos' facts do tend to show that the negligence was based in Indiana, in our case, Sabatos is distinguishable. So based on the cause of action and who the plaintiffs are? That's part of my argument. The other part is what Sabatos discusses is the professional services of a doctor or an attorney. For instance, if I went to California to seek advice from an attorney there, and something went awry based on that advice, just because I'm coming back to Illinois doesn't mean I can sue him or her in Illinois. And I don't think that's the case here. I think Sabatos is clearly distinguishable. The types of services that they were talking about in Sabatos don't mirror what was going on here, especially in light of the fact that the services were inextricably linked to an Illinois medical malpractice case. Also, this idea of the contract between the plaintiffs and TASA has come up again. In this case, arguably, there was a contract between the plaintiffs and TASA, there was a contract between Dr. Morrison and TASA, and there was a contract between the plaintiffs and Dr. Morrison. None of those contracts are mutually exclusive to each other. None of them. The contract that supports Appellant's argument here that there is personal jurisdiction for Dr. Morrison, it's the contract between the plaintiffs and the underlying medical malpractice case and Dr. Morrison that's important here. And again, going back to the contract, there was an offer, there was a communication between the plaintiffs and Dr. Morrison. He accepted, he agreed to be an expert, and he began performing his duties. And he was also going to be paid. Other than that, I would think the issues are clear. Hopefully we've made them clear in our briefs, and I'll rely on the written briefs. And I thank you very much. Thank you, Counsel. The matter will be taken under advisement. We'll take a five-minute recess.